IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRENDA KAY WILSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:14-CV-1784-VEH |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

Brenda Kay Wilson ("Wilson") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied Wilson's application for a determination of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). Wilson timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[1] The court has carefully

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

considered the record and, for the reasons that follow, finds that the decision of the Commissioner is due to be **VACATED** and **REMANDED** to the Social Security Administration ("SSA").

## II.     FACTUAL AND PROCEDURAL HISTORY

Wilson, who received a certificate of high school equivalency (GED), was 51 years-old at the time of the ALJ's decision. (Tr. 160, 185-86). She had past relevant work as a waitress, a cashier checker, a daycare worker, a cleanup worker, a customer service representative, and a small products assembler. (Tr. 212). Plaintiff alleged disability beginning May 19, 2009, due to a bipolar disorder and back problems. (Tr. 185, 418). Plaintiff remained insured for DIB through June 30, 2014. (Tr. 391).

Plaintiff protectively filed applications for Supplemental Security Income (SSI), a period of disability, and disability insurance benefits (DIB) on September 16, 2010, alleging she became disabled on November 30, 2008. (Tr. 264-65, 378-79, 385-90). The Agency denied Plaintiff's applications. (Tr. 274-75, 278-82). Subsequently, Plaintiff requested a hearing before an Administrative Law Judge. (Tr. 283-84). Plaintiff appeared and testified at hearings held in March and November 2012. (Tr. 182-219, 223-52).

At the hearing held in November 2012, Plaintiff amended her alleged disability onset date to May 19, 2009. (Tr. 185, 465). Thereafter, the ALJ issued an unfavorable

decision on December 21, 2012. (Tr. 160-77). On September 2, 2014, the Appeals Council denied Plaintiff's Request for Review. (Tr. 1-6, 158). This appeal was filed on September 17, 2014. (Doc. 1). Wilson and the Commissioner have briefed their respective positions. (*See* docs. 11 & 14). This appeal is now ripe for decision.

## III.   STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide

the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### IV.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## V. **ALJ FINDINGS**

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant engaged in substantial gainful activity during the

following months: May 2010 and June 2010 (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.).

3. There has been a continuous 12 month period(s) during whicht he claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe combination of impairments: chronic neck and low back pain, headaches, a history of benign cavernoma, a history of hepatitis C, status post thyroidectomy, anxiety, a depressive disorder, and cocaine abuse (20 CFR 404.1520(c) and 416.920(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

6. After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform less than the full range of light work. She can lift and carry ten pounds frequently and twenty pounds occasionally. She can stand and/or walk for six hours, and sit for six hours with normal breaks, during an eight-hour workday. She requires a sit/stand option hourly. Her postural are limited to occasionally. She can perform no repetitive bending or twisting at the waist. She can frequently maintain concentration, persistence or pace and understand, remember, and carry out instructions.

7. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. The claimant was born on August 23, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568 and 416.968).

11. Considering the claimant's age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

12. If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

13. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 416.920(d)).

14. If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a limited range of light work. She can lift and carry ten pounds frequently and twenty pounds occasionally. She can stand and/or walk for six hours, and sit for six hours with normal breaks, during an eight-hour workday. She requires a sit/stand option hourly. Her postural are limited to occasionally. She can perform no repetitive bending or twisting at the waist. She can maintain concentration, persistence or pace and understand, remember, and carry out instructions sufficiently for two hour intervals to complete an eight-hour workday.

15. If the claimant stopped the substance use, the claimant would

       continue to be unable to perform past relevant work (20 CFR 404.1565 and 416.965).

16. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

17. If the claimant stopped the substance use, considering the claimant's age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

18. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if she stopped the substance use (20 CFR 404.1520(g), 404.1535, 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

(Tr. 166-177).

## VI.  **ANALYSIS**

The court may reverse a finding of the Commissioner only if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th

Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Wilson advances four arguments in favor of remand: 1) that "the ALJ failed to evaluate the claimant's complaints of pain as required under the Eleventh Circuit pain standard," Doc. 11 at 5, 2) that "the ALJ erred in not finding that Mrs. Wilson meets listing 1.04," *id.* at 18, 3) that "the ALJ further erred in not finding that Mrs. Wilson meets Listing 12.04, Affective Disorders," *id.* at 18, and 4) that "the ALJ improperly found that Mrs. Wilson had medically determined impairment of a drug and alcohol addiction." (*Id.* at 24). But the court need only address one of them, the fourth ground, and only a subpart at that. An intervening change in policy in the Administration's policy directing how to consider a claimant's drug addiction warrants remand. The court expresses no opinion on the merits of Wilson's other grounds for reversal.

"[A] court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to decide whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act." *Certainteed Corp. v. N.L.R.B.*, 714 F.2d 1042, 1056 (11th Cir. 1983) (quoting *N.L.R.B. v. Food Store Employees Union, Local 347*, 417 U.S. 1, 10 n. 10

---

[2] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

(1974)); *see also Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007) (remanding a Social Security appeal for the ALJ to reconsider his determination in light of an intervening policy "clarification" by SSA). The Eight Circuit, in *Sloan*, suggested that the likelihood of a different outcome was a relevant consideration before remanding an appeal. 499 F.3d at 899. That must be right. Retroactivity only matters if retroactive application could change the result, so there is no reason to remand if there is no chance the new rule would alter the outcome. Here, the new rule narrowed the evidence that may be utilized in such a case, and, if it applied, the ALJ may well have reached a different conclusion about the disabling effect of Wilson's drug use. Remand is therefore appropriate.

The Act prohibits receipt of benefits when a claimant's drug addiction is material to the determination that he is disabled. 42 U.S.C. §§ 423(d)(2)(C) & 1382c(a)(3)(J). In an attempt to elucidate the considerations and procedures required to assess disabling drug addiction, the SSA issued SSR 13-2p, 2013 WL 621536 (Feb. 20, 2013) ("13-2p"), which the SSA describes as a "policy interpretation" that "rescinds and replaces" SSR 82-60, 1982 WL 31383 (Jan. 1, 1982). 13-2p establishes a six step procedure for determining whether a claimant has drug addiction or alcoholism ("DAA"), the extent to which the DAA affects the disability determination, and the acceptable evidence to be used in assessing the interaction

between DAA and disability. A DAA is a medically determinable impairment, defined as the substance use disorders in the DSM. 13-2p at *2.

Relevant here, the ALJ, in step one, must determine whether the claimant has a DAA, and Wilson asserts that the administrative record does not contain "objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source that supports a finding that a claimant has DAA," SSR 13-2p at *10, which is required to establish DAA. Critically, a DAA is only established when the record demonstrates "a maladaptive pattern of substance use and the other requirements for diagnosis of a Substance Use Disorder(s) in the DSM." *Id.* An ALJ's finding of DAA cannot be premised on "[s]elf-reported drug or alcohol use" alone. *Id.*

If the ALJ determines that the claimant has a DAA, the ALJ must determine second whether the claimant is disabled considering all impairments—including the DAA. In the third step, the ALJ considers whether DAA is the claimant's only impairment, and, if so, the claimant may not receive disability benefits. If there are other impairments, the ALJ, in step four, must determine whether those impairments are disabling while the claimant is dependent upon alcohol or drugs. Fifth, the ALJ must decide whether the DAA causes the other impairments. Finally, the ALJ must assess whether the other impairments would be disabling in the absence of the DAA. If so, then the claimant is entitled to benefits. If not, she is not.

Thus, the existence of a DAA—as defined in SSR 13-2p— is a critical premise for the determination that a claimant is precluded from recovering benefits due to her drug abuse. If, on the other hand, the claimant uses drugs in a way that falls short of DAA, the claimant is not precluded. Here, the ALJ determined that Wilson's drug use constituted an addiction that materially contributed to her disability. Under SSR 13-2p, this determination would have to be based upon acceptable medical evidence, and not just Wilson's statements, for statements merely trigger a duty to develop the record. There are two reasons that 13-2p might change the outcome here.

First, there is a substantial likelihood that the evidence relied on by the ALJ would not establish DAA. Her determination that Wilson is disabled by drug use depends in substantial part upon Wilson's reporting of that drug use. She reported to Drs. Plotka and Piha that she used cocaine, and she refused to take a drug screen from Plotka. (Tr. 729, 765). This evidence literally falls within 13-2p's designation of self-reported drug use that is insufficient to establish DAA.[3] The August 21, 2011, drug screen that "was positive for benzodiazepines and cocaine metabolites" referenced by the ALJ as supporting her conclusion does not appear in Exhibit 16F. The court found a drug screen from August 20, 2011 in Exhibit 14F that did reflect the presence of

---

[3] The Commissioner does not raise the argument that a medical source's publication of the claimant's self-reported use is sufficient to establish DAA, so the court does not consider whether this is so.

benzodiazepines and cocaine metabolite, *see* tr. 715, but a single positive drug test is not evidence of a "maladaptive pattern of substance abuse." 13-2p at *11.[4]

A letter from a treating physician, Dr. Aggarwal, stated that Wilson "has chronic low back pain secondary to arthritis. She is on strong narcotics and is precluded from gainful employment." (Tr. 580). The ALJ relied on the second sentence in determining that she is disabled <u>because</u> of her drug use, but that reading is not compelled, or even natural, in light of the full quote. Finally, the ALJ, at tr. 168, noted that the claimant has been admonished not to use drugs and alcohol—an admonition that many patients hear from their doctors. This is not probative of whether Wilson had DAA.

The second factor favoring remand is that the ALJ offered <u>no</u> analysis in step four. Specifically, she did not explain how Wilson's drug abuse contributes to her disability, saying only "[t]he claimant's drug abuse is a contributing factor material to her disability." (Tr. 168).[5] This "analysis" is insufficient, if 13-2p applies, to satisfy

---

[4] The Commissioner's brief presents additional citations to the record supporting the ALJ's decision, but it is the <u>ALJ's opinion</u> that matters. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) ("[C]ourts may not accept appellate counsel's *post hoc* rationalizations for agency action."). In particular, at tr. 729–30, Dr. Piha discusses Wilson's chemical dependency, including cocaine abuse, but one reasonable reading of that discussion is a historical overview of Wilson's chemical dependency. In any event, it is for the ALJ, not this court, to weigh this evidence—which she failed to do.

[5] Later in the opinion, the ALJ concluded that "the claimant's drug abuse, in and of itself, precludes substantial gainful activity," but "her remaining physical and mental impairments are not disabling." (Tr. 172). Again, this is insufficient to establish both the

the ALJ's duty to "clearly disclose[]" the grounds upon which she acted. *See S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943).

## VI. <u>CONCLUSION</u>

The previous opinion is **VACATED**, and the case is **REMANDED** to the Social Security Administration to consider whether SSR 13-2p is retroactive, and, if so, whether it would affect the ALJ's determination of Wilson's disability. A separate order will issue.

**DONE** and **ORDERED** this 29th day of January, 2016.

*[signature: Hopkins]*

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

disabling effect of Wilson's drug use and its materiality to her other impairments.